**James SCOTT, Plaintiff,**

v.

**HOME CHOICE, INC. d/b/a Rentway, Defendant.**

**No. CIV.A.02–2112–CM.**

United States District Court, D. Kansas.

Feb. 18, 2004.

---

James Scott, Grandview, MO, pro se.

Anthony J. Romano, Matthew R. O'Connor, Polsinelli, Shalton & Welte, P.C., Kansas City, MO, for Defendant.

### MEMORANDUM AND ORDER

MURGUIA, District Judge.

Plaintiff James Scott filed this action bringing fraud, breach of contract and malicious use of process, abuse of process claims against defendant Home Choice, Inc. d/b/a RentWay (Rentway). This matter comes before the court on RentWay's Motion for Summary Judgment (Doc. 54), Scott's Motion for Partial Summary Judgment as to Liability but Not Damages (Doc. 58) and Scott's Motion for Summary Judgment by Plaintiff or if Not Granted, for Partial Summary Judgment (Doc. 59).

### I. Facts/Procedural History [1]

RentWay is a corporation conducting business in the State of Kansas. Scott is a resident of the State of Missouri and a former employee of RentWay. After leaving his employment with RentWay in 1998, Scott filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) asserting race discrimination and harassment claims against RentWay.

On May 14, 1999, Scott executed a confidential settlement agreement and general

---

1. Plaintiff failed to specifically controvert defendant's facts as required by D. Kan. Rule 56.1. However, plaintiff did include a statement of material facts as to which plaintiff contends a genuine issue exists as required by D. Kan. Rule 56.1. Defendant does not controvert any of plaintiff's statements of fact for purposes of these motions. Since plaintiff appears pro se, the court will liberally construe any facts alleged by plaintiff in the light most favorable to plaintiff pursuant to Federal Rule of Civil Procedure 56.

release (the settlement agreement) to resolve his EEOC Charge and any other claims that he had or may have had against RentWay and any of its affiliated companies. The settlement agreement contains a general release and waiver of Scott's claims and a covenant not to sue RentWay. Pursuant to the settlement agreement, Scott agreed to fully and finally release and discharge RentWay from any and all actions, causes of action, suits and other similar actions, whether known or unknown, arising out of his employment with RentWay. Scott specifically agreed to never sue RentWay for any claims of discrimination, harassment, or retaliation under Title VII of the Civil Rights Act of 1964 (Title VII), or any other anti-discrimination and/or employment laws.

The settlement agreement also contains a confidentiality and non-disparagement provision, which states that Scott will "not make any statements or take any actions to disparage [RentWay], to place [RentWay] in a negative light or which are inconsistent with the interests of [RentWay]." Scott also agreed not to "instigate, cause, advise or encourage any other persons, groups of persons, corporations, partnerships or any other entity to file litigation or other claims or charges against [RentWay]." Scott was, at all times prior to executing the settlement agreement, represented by an attorney. RentWay paid Scott approximately $43,000 (in addition to attorneys' fees) as consideration for executing the settlement agreement.

On July 12, 1999, Scott filed a lawsuit in this court entitled *James Scott v. Home Choice, Inc. d/b/a Rentway,* Case No. 99-2311-JWL (the first federal lawsuit). In the first federal lawsuit, Scott alleged that RentWay violated his rights under Title VII and 42 U.S.C. § 1981. Before even filing an answer, RentWay moved to dismiss Scott's complaint, claiming that the allegations forming the basis of the first federal lawsuit were the subject of the settlement agreement and that by filing the first federal lawsuit, Scott breached the settlement agreement. On November 19, 1999, this court held that the settlement agreement executed between the parties is an enforceable contract and dismissed the first federal lawsuit.

On February 28, 2000, RentWay filed a lawsuit against Scott in the Circuit Court of Jackson County, Missouri, entitled *Home Choice, Inc. d/b/a Rent Way v. James Scott,* Case No. 00-CV-205272 (the Missouri action), alleging that Scott breached the settlement agreement when he filed the first federal lawsuit and that Scott had recruited potential plaintiffs against RentWay. The Missouri action also sought to enjoin Scott from breaching the non-disparagement clauses of the settlement agreement.

RentWay filed a motion for summary judgment in the Missouri action, seeking to enforce the terms of the settlement agreement, which the court granted on October 17, 2001. The Missouri court's October 17, 2001, Order prohibited Scott from: 1) suing or bringing any other action against RentWay, whether federal, state, local or administrative, with respect to any claim arising from his employment with RentWay; 2) making any statements or taking any actions to disparage RentWay or to place RentWay in a negative light; or 3) instigating, causing, advising or encouraging any other person, groups of persons, corporations, partnerships or any other entity to file litigation or other claims or charges against RentWay. As part of ruling on RentWay's motion for summary judgment, the Missouri court held that the settlement agreement executed between the parties constitutes a valid and enforceable contract.

On March 13, 2002, Scott filed the present lawsuit against RentWay alleging fraud, malicious use of process, abuse of process, and breach of contract claims. Subsequently, on April 1, 2002, RentWay filed a motion in the Missouri action to hold Scott in civil contempt of court for violating the Missouri court's October 17, 2001, Order and the settlement agreement. In the contempt motion, RentWay alleged that Scott had disparaged RentWay, instigated other individuals to file litigation against RentWay, and filed another suit against RentWay in federal court. On August 20, 2002, the Missouri court held a hearing on the contempt motion, which included presentation of evidence by both Scott and RentWay. The Missouri court subsequently held Scott in contempt of court for violating its October 17, 2001, Order. On November 26, 2002, the Missouri court entered an order fining Scott $1000. Scott has requested that the Missouri court reduce the amount of the contempt fine, but did not appeal either the Missouri court's summary judgment in favor of RentWay or the Missouri court's November 26, 2002, contempt order.

In the meantime, on April 15, 2002, RentWay filed a motion to dismiss Scott's complaint in the current lawsuit pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and on grounds of "judicial economy." RentWay argued that plaintiff's claims arose from the same set of facts forming the basis of litigation that was pending in Missouri state court in Jackson County at that time. RentWay also claimed the current lawsuit was an alleged violation of the settlement agreement.

In a February 20, 2003, Order, this court denied RentWay's motion to dismiss on both grounds, holding that subject matter jurisdiction was appropriate pursuant to 28 U.S.C. § 1332, and that it could find no grounds for abstaining from hearing the case. In its February 20, 2003, Order denying RentWay's motion to dismiss, this court noted:

> The court is uncertain whether, in asking the court to dismiss plaintiff's complaint because it "arise[s] from the same set of facts" as the state court litigation, defendant Rent Way requests the court to abstain in light of the ongoing state proceeding, or to dismiss the case on grounds of res judicata or collateral estoppel. The court's evaluation of defendant Rent Way's argument in light of the abstention, res judicata, and collateral estoppel doctrines demonstrates that defendant Rent Way has failed to satisfy the requirements of those doctrines.

This court ruled that RentWay had not provided sufficient information to demonstrate to the court that Scott's current lawsuit was premised on the settlement agreement that formed the basis for the Missouri action and noted that "plaintiff's breach of contract claim filed in the instant action does not arise from, or mention, the Settlement Agreement."

Subsequently, on May 12, 2003, RentWay filed the current summary judgment motion arguing that 1) plaintiff should be collaterally estopped from pursuing his fraud and breach of contract claims, 2) plaintiff cannot make a prima facie case for his malicious use of process claim, and 3) plaintiff's claims are improperly before this court as they are in essence an appeal of the Missouri court's October 17, 2001, and November 26, 2002, rulings and the judgments entered against plaintiff.[2]

---

**2.** The court notes that although the Missouri court had not entered its November 26, 2002, Order at the time Scott filed the current lawsuit, by the time RentWay filed its Motion for Summary Judgment in this case, the Missouri court had entered its November 26, 2002, Order.

In his response to RentWay's summary judgment motion, and in his own motion for summary judgment, Scott, while denying that the settlement agreement forms the basis for his current lawsuit, admits that his current lawsuit is based on RentWay's actions (and alleged unethical behavior) in pursuing the Missouri action, as well as his challenges to various factual and legal issues surrounding both the Missouri court's October 17, 2001, Order, and the Missouri court's November 26, 2002, Order. However, Scott argues that the Missouri court's rulings are not final, and thus not appealable at this time, making the federal court an appropriate forum for his claims. Scott also appears to argue that RentWay's filing of the Missouri action was improper because RentWay should have filed a compulsory counterclaim in the first federal lawsuit, rather than filing a separate action in Missouri state court. Scott further argues that RentWay's alleged actions and omissions in the first federal lawsuit, which carried over into the Missouri action, also provide a basis for his fraud and breach of contract claims.

In Scott's suggestions in support of his Motion for Summary Judgment, he states in relevant part:

This case involves breach of contract and abuse of process claims. These claims stem from RentWay's perpetual acts of fraud which are also involved in this case.... In RentWay's Contempt Motion (Exhibit A) it successfully creates the impression that I willfully refused to obey the Court's Order.

. . .

The Missouri Court however agreed with RentWay's deception . . . .

RentWay deceptively and successfully led the Missouri Court to believe conditions that never did exist.

. . .

I have asserted that RentWay in related case no. 99–2311 JWL authored deceptive briefs.

Plf.'s Sugg. in Supp. at 7, 8, and 10.

In specific support of his abuse of process claim, Scott states in relevant part:

RentWay's April 1, 2002 filing of their Contempt Motion was misuse of a legal process for which it is not designed. RentWay filed the Contempt Motion to create a diversion due to my filing of this lawsuit.

. . .

Not one of the submitted reasons is enough evidence to foment a filing of a Contempt Motion.

. . .

This may initially seem as if it is an indictment of the Missouri Court, but it isn't. Because RentWay cunningly made it appear that I willfully and contumaciously refused to obey the Order, the onus is on RentWay.

. . .

RentWay's Contempt Motion was filed under not only false but erroneous pretenses. These issues could have and are now being addressed in this action.

*Id.* at 12 and 14.

In specific support of his breach of contract claim, Scott states in relevant part:

Rent Way is under the false impression that the charge of breach has to do exclusively with the enforcement of the Agreement. It has to do with Rent Way cavalierly ignoring and flaunting the fundamental principles of contract law.

Due in part to Rent Way's fraudulent behavior and their abuse of legal process, they have caused the Missouri Court to unwittingly go beyond its duties and hence perverted the Agreement.

The Agreement, as originally written, gives me the full right to pursue causes of action against Rent Way which may arise after the date of the Agreement that does not relate to my employment with Rent Way through the effective date of the Agreement (5/14/99).

. . .

Rent Way's slick rewording of our Agreement caused the Missouri Court to conclude that "Scott has deliberately violated this Court's October 17, 2001 Order in several ways . . . ."

. . .

Rent way furtively misled the Missouri Court to do things with the Agreement that is not within the scope of its duties.

. . .

By its ruling, the Missouri Court has (unknowingly) done everything which the aforecited laws says it cannot!

. . .

The Missouri Court has explained that the Agreement says that I cannot reference, disparage or bring suit against Rent Way in regard to discrimination. Once we understand this fact we can return to Rent Way's most recent Motion for Summary Judgment (pgs.24–25) and apply the Court's interpretation of the Agreement. When we do this we will find no evidence of violation or willful/contumacious refusal to obey the Missouri Court's Order.

*Id.* at 14–16.

Regarding RentWay's Missouri action, Scott further states in relevant part:

Could Rent Way have raised the issue of breach of contract in the first lawsuit? Undeniably YES!

. . .

Once again Rent Way confesses that the alleged breach occurred in the first litigation. Why didn't they address the issue of breach then? The Court may be asking why didn't I bring up those issues (collateral estoppel, res judicata,

compulsory counterclaim) then? I did address them very loudly but the Missouri Court didn't hear me. Rent Way's fraudulent statements swayed that Court.

. . .

Rent Way's underhanded handling of events has led the Missouri Court to go beyond its boundaries. The Agreement has been stepped on and polluted by the constant deceptive acts perpetrated by Rent Way.

*Id.* at 21–22.

In his response to RentWay's motion for summary judgment, Scott states in pertinent part:

In Rent Way's analysis, they state that my counts of fraud and breach of contract are premised exclusively on attacking the enforceability of the Settlement Agreement. Nothing could be further from the truth.

The fraud has to do with many things, none of which has to do with attacking the enforceability of the Agreement. Part of the initial findings of fraud leading to this instant case had to do with Rent Way's altering the wording of the Agreement after our 8–23–01 Oral Arguments. Rent Way pulled a slight yet very significant act of prestidigitation. This change of wording subsequently led the Missouri Court to interpret our Agreement in a different light than what was bargained for.

. . .

Rent Way's filing of the Contempt Motion (Exhibit A) is an abuse of process.

. . .

I filed this suit because of the shenanigans that either took place during and after August 23, 2001 or allegations that I had ascertained within the statute of

limitations, after the previously mentioned 11–19–99 date.

Resp. Brief at 1, 4, and 5.

Finally, in Scott's reply brief in support of his motion for summary judgment, he states in relevant part:

> Rent Way chose to surreptitiously hold on to its claim of breach (which it later filed in Missouri), failing to file it as a *compulsory* counterclaim (*Id., page 8*) in the Kansas action. I filed a motion challenging the subject matter jurisdiction which the Missouri court ignored.

Reply Brief at 3.[3]

## II. Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *see Adler*, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.* Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

 The court acknowledges that plaintiff appears pro se and his response is entitled to a somewhat less stringent standard than a response filed by a licensed

---

**3.** The court has excerpted several sections from Scott's briefs and included them in the Facts/Procedural History section of this Memorandum and Order. In order to most liberally construe facts alleged by Scott in the light most favorable to Scott as a pro se plaintiff, the court sets them forth in Scott's own words. As the court noted above, Rent-Way does not controvert Scott's facts for purposes of the summary judgment motions.

attorney. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). However, this does not excuse plaintiff from the burden of coming forward with evidence to support his claims as required by the Federal Rules of Civil Procedure and the local rules of this court. *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir.1988). Even a pro se plaintiff must present some "specific factual support" for his allegations. *Id.*

### III. Analysis

■ The parties, in their respective motions for summary judgment, have raised various procedural issues that might affect plaintiff's claims in this action. The court first addresses the parties' procedural arguments before turning to the summary judgment analysis. In considering the procedural arguments, the court "accepts as true all well-pleaded facts, as distinguished from conclusory allegations, and views those facts in the light most favorable to the nonmoving party." *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir.1998).

### A. The Missouri Action

■ As an initial matter, the court addresses plaintiff's argument that Rent-Way's filing of the Missouri action was improper because RentWay should have filed a compulsory counterclaim in the first federal lawsuit instead of filing a separate action in Missouri state court. RentWay contends that it never filed an answer in the first federal lawsuit and was never required to state any claims against Scott in the first federal lawsuit. Rather, in response to Scott's first federal lawsuit, RentWay filed a motion to dismiss Scott's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The court treated the motion as a summary judgment motion because the parties

presented, and the court considered, matters outside the pleading in making its ruling. The court subsequently granted RentWay's motion to dismiss.[4] RentWay was therefore free to bring any claims it had against Scott in a separate action.

When RentWay filed its Missouri court action, it was for the Missouri court to determine whether it had jurisdiction over RentWay's claims. Moreover, Scott admits that even though he raised the issue of subject matter jurisdiction with the Missouri court, the Missouri court exercised jurisdiction over RentWay's claims. This court will defer to the Missouri court's determination of its jurisdiction over RentWay's claims.

### B. The Current Action: Fraud and Breach of Contract Claims

■ With regard to the current action, the court first considers Scott's argument that RentWay's alleged actions and omissions in the first federal lawsuit, which Scott claims carried over into the Missouri court action, also provide a basis for his fraud and breach of contract claims in this court. The court notes that, if Scott disagreed with the outcome of the first federal lawsuit, he could have filed a motion to alter or amend the judgment pursuant to Fed.R.Civ.P. 59(e), requested relief from the judgment pursuant to Fed.R.Civ.P. 60(b), or even appealed it to the Tenth Circuit Court of Appeals. Scott failed to pursue any of these options. Thus, Scott's claims with regard to the first federal lawsuit are moot.

Moreover, if, in fact, Scott felt he had a breach of contract or fraud claim against RentWay due to its actions during the first federal lawsuit that continued during the Missouri action, Scott should have pled an affirmative defense of fraud or filed a counter-claim for breach of contract

---

**4.** Scott did not appeal the court's dismissal of his complaint in the first federal lawsuit.

against RentWay in the Missouri action. *See* Mo. Sup.Ct. Rule 55.08. (requiring that fraud be pled as an affirmative defense); *see also* Mo. Sup.Ct. Rule 55.32(a) ("A pleading shall state as a counterclaim any claim that at the time of serving the pleading the pleader has against any opposing party...."); *see also* Mo. Sup.Ct. Rule 55.32(d) ("A claim that either matured or was acquired by the pleader after serving the pleading may, with the permission of the court, be presented as a counterclaim by supplemental pleading.").

In considering all of the facts and arguments Scott set forth in response to RentWay's summary judgment motion (and in support of his own summary judgment motion) in a light most favorable to Scott, the court finds no allegation by Scott that the acts on which Scott bases his fraud and breach of contract claims in this action arose after the Missouri action concluded. In fact, all of the alleged wrongdoing Scott has set forth occurred during the first federal action or during the Missouri action. Moreover, it appears that the facts and evidence Scott has set forth were readily available to Scott during the Missouri action and were even raised before the Missouri court.

█ Scott was compelled to bring existing counterclaims and defenses to RentWay's breach of contract claim in the Missouri action. Scott had ample opportunity to present counterclaims and defenses to RentWay's breach of contract claim before the Missouri state court. Therefore, Scott is barred from bringing such claims in a subsequent action when he was compelled to state them in the Missouri action. *See Stevinson v. Deffenbaugh Indus., Inc.*, 870

S.W.2d 851, 856 (Mo.App. W.D.1993)(holding that "a claim which relates to the same operative facts as an opponent's claims, and which is logically related to that claim, must be asserted as a counterclaim to the opponent's claim, or not at all."); *see also State ex rel. J.E. Dunn, Jr. & Assoc., Inc. v. Schoenlaub*, 668 S.W.2d 72, 75 (Mo. banc 1984).

The court next turns to RentWay's arguments that Scott's fraud and breach of contract claims are improperly raised with this court because they are essentially an appeal of the Missouri court's rulings. The undisputed facts, as well as the arguments asserted by Scott in the current case, support the fact that Scott's claims in this lawsuit are premised on his unhappiness and disagreement with the Missouri court's rulings and judgments (and RentWay's role in obtaining them). Scott's proper recourse to challenge the outcome of the Missouri action is an appeal in Missouri state court. Scott could have sought relief from a judgment or order in the Missouri action under Mo. Sup.Ct. Rule 74.06, within one year from the date of the judgment. Grounds for seeking relief under Rule 74.06 include "fraud ..., misrepresentation, or other misconduct of an adverse party." 74.06(b); *see also Cozart v. Mazda Distrib. (Gulf), Inc.*, 861 S.W.2d 347, 352 (Mo.App. S.D.1993). Scott also could have sought review and modification of the Missouri court's judgment during the 30–day period after the judgment was entered pursuant to Mo. Sup.Ct. Rule 75.01. After such time, jurisdiction over any appeal by Scott lies with Missouri's appellate courts. *See* Mo. Sup.Ct. Rule 81.05.[5]

---

**5.** Scott also argues that the Missouri court's rulings are not final, and thus not appealable at this time. This court disagrees. The parties submitted as exhibits the Missouri court's October 17, 2001, Order and the Missouri court's November 26, 2002, Order. The court believes these Orders to be final and directly appealable within the Missouri state court system, despite Scott's assertion that he has requested a reduction in his contempt fine under the November 2002 Order. If one of the Orders is not appealable at this point,

Moreover, because Scott openly admits that his current action requests review of the judgments in the Missouri action, challenges the jurisdiction of the Missouri court, and claims that the Missouri action interfered with his rights, this court must apply the *Rooker–Feldman* doctrine to plaintiff's claims. The *Rooker–Feldman* doctrine provides that federal courts, other than the United States Supreme Court, lack jurisdiction to entertain claims for review of state court judgments. *See D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 486, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *see also Rooker v. Fid. Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). The *Rooker–Feldman* doctrine precludes "a party losing in state court ... from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy,* 512 U.S. 997, 1005–06, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994); *see also Kenmen Eng'g v. City of Union,* 314 F.3d 468, 473 (10th Cir. 2002). The doctrine "applies to *all* state-court judgments, including those of intermediate state courts." *Kenmen Eng'g,* 314 F.3d at 473. It also applies to claims "inextricably intertwined" with a state court judgment. *Id.* at 475. Because the relief Scott seeks is essentially an order setting aside the Missouri court's judgments, his federal claims are inextricably intertwined with those judgments and the substance and procedure of the Missouri court. Therefore, this court does not have jurisdiction to review any rulings by the Missouri state court. The court thus finds that, for all the reasons set forth above, it must dismiss Scott's fraud and breach of contract claims.

## C. The Current Action: Malicious Use of Process, Abuse of Process Claim

The only one of Scott's claims that might escape dismissal under the *Rooker–Feldman* doctrine is Scott's malicious use of process, abuse of process claim. Scott claims that RentWay maliciously pursued the Missouri action and the contempt of court motion in the Missouri action to punish him for bringing the first federal lawsuit. Scott also claims that this claim actually composes two separate claims under Kansas law—one for malicious use of process, and one for abuse of process. RentWay contends that it had valid grounds for filing the Missouri action and the contempt motion. RentWay further claims that Scott has not alleged facts sufficient to preclude summary judgment on either claim.

"Abuse of process exists when the defendant 'initiated or continued the proceedings, both without having probable cause for bringing it *and* primarily for a purpose other than that of obtaining the proper adjudication of the claim on which the civil proceedings were brought.' " *Vanover v. Cook,* 69 F.Supp.2d 1331, 1335 (D.Kan.1999) (citing *Hokanson v. Lichtor,* 5 Kan.App.2d 802, 626 P.2d 214, 222 (1981)) (emphasis added). The undisputed facts demonstrate that RentWay had probable cause for bringing the Missouri action. Through the Missouri action, RentWay sought to enforce the settlement agreement. The Missouri court agreed with RentWay, as it granted summary judgment in RentWay's favor and subsequently granted RentWay's contempt of court motion. Scott can allege no genuine issue of material fact sufficient to preclude summary judgment on this claim. The

Scott should pursue that remedy as soon as it becomes available to him.

court thus grants summary judgment on Scott's abuse of process claim.

 To succeed on a malicious prosecution action, Scott must establish the following elements: 1) RentWay initiated civil proceedings against Scott; 2) RentWay acted without probable cause; 3) RentWay acted with malice, for the primary purpose other than securing a proper adjudication of the claim; 4) the proceeding terminated in favor of Scott; and 5) Scott sustained damages. *Vanover*, 69 F.Supp.2d at 1336 (citing *Bergstrom v. Noah*, 266 Kan. 829, 836–37, 974 P.2d 520, 526 (1999)).

Even viewing the uncontroverted facts in a light most favorable to Scott, Scott cannot state a prima facie case of malicious prosecution. The fourth element of a malicious prosecution claim requires a party to prove that the underlying proceeding was terminated in his or her favor. *Id.* at 1336. The Missouri action, which Scott identifies as the basis for his malicious prosecution claim, did not end in his favor. Rather, the Missouri court entered summary judgment in RentWay's favor and subsequently found Scott in contempt of its summary judgment order. Because Scott was not successful in the Missouri action, he cannot state a prima facie case of malicious prosecution. RentWay is entitled to summary judgment on Scott's malicious use of process claim.

**IT IS THEREFORE ORDERED** that RentWay's Motion for Summary Judgment (Doc. 54) is granted.

**IT IS FURTHER ORDERED** that Scott's Motion for Partial Summary Judgment as to Liability but Not Damages (Doc. 58) and Scott's Motion for Summary Judgment by Plaintiff or if Not Granted, for Partial Summary Judgment (Doc. 59) are denied.

**IT IS FURTHER ORDERED** that this case is hereby dismissed.